## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CV-22726-GAYLES/Turnoff

JORGE LUIS ALDAO,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

_____/

## **REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court upon the parties' cross-motions for summary judgment.

(ECF No. 31, 32). This case was referred to the undersigned for a Report and Recommendation on

dispositive matters by the Honorable Darrin P. Gayles, United States District Court Judge for the

Southern District of Florida. (ECF No. 3). Upon review of the administrative record, including a

transcript of the proceedings before the Administrative Law Judge, the exhibits, the filings of the

parties, the applicable law, and being otherwise duly advised in the premises, the undersigned makes

the following findings of fact and conclusions of law.

## **Procedural Background**

On January 27, 2011, Plaintiff Jorge Luis Aldao (hereinafter, "Aldao") filed a Title II

application for a period of disability and disability insurance benefits, under the Social Security Act,

alleging disability since May 11, 2010. [Tr. 176-79].[1] The Social Security Administration ("SSA") denied the claim initially on March 28, 2011 [Tr. 59], and upon reconsideration on May 20, 2011. [Tr. 62]. Thereafter, Aldao filed a written request for hearing on June 15, 2011. [Tr. 77-78].

At Aldao's counsel's request, the hearing, originally scheduled for July 3, 2012, was continued to September 19, 2012. [Tr. 27]. Due to the submission of voluminous records immediately prior to the hearing, it was specially re-set for the following day. Id. The additional evidence submitted by Aldao was either dated prior to the alleged onset date of May 11, 2010, or consisted of duplicates of previously submitted evidence.

The hearing took place on September 20, 2012, before Administrative Law Judge ("ALJ") Lornette Reynolds. [Tr. 52-57]. Aldao was present with his attorney of record, and testified with the assistance of a Spanish interpreter. Id. Also testifying at the hearing were Kenneth L. Cloninger, an impartial medical expert, and Jeannine M. Salek, an impartial vocational expert. Id. An unfavorable decision issued on November 26, 2012. [Tr. 27-41].

## Summary of Claimant's Personal and Medical Histories

Aldao was born on August 29, 1970. He completed the 9th grade in Cuba and is illiterate in English. He has past relevant work experience as a construction worker, mechanic's helper, messenger, janitor, warehouse worker, and forklift operator. [Tr. 39, 226, 801-11].

In October 2002, Aldao injured his spine while lifting concrete blocks at work. In January 2003, he was injured again while lifting lumber at work. A contemporaneous MRI showed a broad-based central herniated nucleus pulposus with extrusion at the L4-5 and L5-S1 levels. [Tr. 603-05].

---

[1]References are to the record of the administrative proceedings, which was filed at Docket Entry No. 28 (ECF No. 28), and shall be designated as: [Tr. Page Number].

He was conservatively treated and went back to work.

In March 2008, Aldao re-injured his spine while lifting a heavy lead ingot at work. A contemporaneous MRI showed disk herniations at the L4-5 dn L5-S1 levels. [Tr. 601-02]. Again, Aldao was conservatively treated and returned to work.

On May 11, 2010, Aldao injured the same spinal area. An x-ray was negative for acute abnormality. [Tr. 348]. He was diagnosed with lumbar spine sprain with spasm. [Tr. 348]. A June 8, 2010 MRI showed mild disc bulge and mild bilateral foraminal narrowing at L5-S1, but no evidence of spinal stenosis. [Tr. 406, 608].

Aldao claimed that, as a result of these multiple spinal injuries, he had developed fibrous scar tissue entrapping the L4-5 nerve root sleeve causing debilitating back and leg pain and making him unable to work.

## Medical Examinations

Beginning on May 27, 2010, Aldao was treated by Dr. Joel P. Kallan in connection with his worker's compensation claim. [Tr. 392-419, 555-76, 608-18]. By July 26, 2010, Dr. Kallan noted that Aldao no longer used aides, canes or braces. [Tr. 397]. On August 23, 2010, Dr. Kallan noted that Aldao had reached maximum medical improvement without permanent physical impairment from his injury. [Tr. 393]. He further noted that Aldao would benefit from mental health counseling sessions for his anxiety. [Tr. 394].

Aldao was treated at Orthopaedic Associates USA beginning on October 12, 2010. [Tr. 365-91, 420-67]. He was seen by Dr. Christopher A. Brown who noted that Aldao had a very small disc herniation at L4-5 that actually had improved from the 2008 film. [Tr. 433]. Dr. Brown opined that Aldao had reached maximum medical improvement, with a total bodily impairment of 0%. [Tr. 433].

Aldao was also seen by Dr. Joel W. Salamon on October 21, 2010. He found that Aldao had good range of motion with some pain. [Tr. 431]. On November 22, 2010, Dr. Salamon indicated that Aldao needed a diagnostic epidural steroid injection due to previous disc herniation. [Tr. 425].

On March 15, 2011, Aldao was examined by Richard Elias Fernandez, Ph.D., a psychological consultative examiner. [Tr. 469-72]. Aldao was diagnosed with major depressive disorder with psychotic features, moderate; and anxiety disorder not otherwise specified (NOS). [Tr. 471]. Mr. Fernandez noted that Aldao felt a lack of purpose since being out of work; had moderate disinterest in interacting with others, had moderate problems with maintaining mental persistence, and had moderate problems in his capacity to follow a schedule, appropriately use judgment, and moderately to markedly stress tolerance. [Tr. 472].

On March 27, 2011, Linda O'Neil, Ph.D., an agency reviewing physician, completed a Psychiatric Review Technique. [Tr. 473-86]. Ms. O'Neil noted moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. [Tr. 483]. O'Neil noted further that Aldao's claims were "partly credible." [Tr. 485]. She found that the limitations were moderate, but not marked. [Tr. 485]. She opined that Aldao had limited concentration, persistence and pace and a limited ability to deal with interpersonal demands and stress, but that he had the ability to do simple routine repetitive tasks. Id.

Dr. O'Neil also completed a Mental Residual Functional Capacity Assessment on March 27, 2011. [Tr. 487-90]. She found that Aldao was moderately limited with respect to the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities

within a schedule, maintain regular attendance, and be punctual within customary tolerances [Tr. 487]; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to respond appropriately to changes in the work setting. [Tr. 488]. She further found that Aldao could do simple tasks, had limited ability to deal with extensive interpersonal demands and with stress, and could relate on a limited basic level in a fairly low-demanding setting and could handle moderate change. [Tr. 489].

On March 28, 2011, Lisa Huckaby completed a Physical Residual Functional Capacity Assessment. [Tr. 491-98]. She found that Aldao could occasionally lift and/or carry 50 pounds; frequently 25 pounds; stand and/or walk and sit about 6 hours in an 8-hour workday; push and/or pull unlimited. [Tr. 492]. She noted that Aldao was able to toe heel walk and had negative straight leg raise. [Tr. 492]. She found medium functional limitations. [Tr. 492]. Ms. Huckaby noted that Aldao's statements regarding pain appeared to be "partially credible," as the severity and duration of the symptoms was somewhat disproportionate to the expected severity and duration of the symptoms of the medically determinable impairment. [Tr. 496]. She noted further that pain was a factor and that the RFC had been reduced accordingly. [Tr. 496].

On May 17, 2011, Sheldon Levy, Ph.D., an agency reviewing physician, completed a Mental Residual Functional Capacity Assessment. [Tr. 502-05]. He found that Aldao was moderately limited, same as above. He found further that Aldao would have moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, but that his overall mental status suggested that he was capable of simple, repetitive tasks

in the work environment. [Tr. 504]. Dr. Levy also completed a Psychiatric Review Technique wherein he found that Aldao had mild limitations in activities of daily living and social functioning and moderate limitations in maintaining concentration, persistence, and pace. [Tr. 506-19].

On May 19, 2011, Loc Kim Le, M.D., an agency reviewing expert, conducted a case analysis and affirmed the RFC assessment conducted by Ms. Huckaby on March 28, 2011. [Tr. 520].

## Hearing Testimony

Aldao testified that he suffers pain in his bones, hands, shoulders, spine, hips, and legs. [Tr. 769-72]. He cannot tolerate sitting, standing, or walking for prolonged periods and needs to change position frequently. [Tr. 773]. He estimated that he could sit and stand for 15 to 20 minutes at a time. [Tr. 773-74]. Aldo currently uses a cane that was prescribed after his last spinal injury because he is afraid of falling. [Tr. 775]. Aldao estimated that he can walk less than a full block at one time. He does not drive because he does not want to get into an accident. [Tr. 776]. Mentally, he has a bad temper due to his discomfort, and poor concentration and memory, which prevent him from going outside alone. [Tr. 778-82]. Aldao spends most of his day lying down in a fetal position and frequently changes positions. [Tr. 780].

Dr. Cloninger, testified that Aldao suffered the same type of injury in 2010 as he had suffered in 2008, with two annular tears at the L4-5 and L5-S1 levels and disk herniation, but no stenosis. [Tr. 786]. Aldao also suffered from degenerative changes of the hip. [Tr. 787]. Dr. Cloninger stated that the evidence fit the work level as determined by Lisa Huckaby in Exhibit 10F. [Tr. 788]. However, Dr. Cloninger stated that he thought Aldao had not been properly evaluated to this point, because the record did not account for the pain and other symptoms he was having in his legs. [Tr. 793]. Accordingly, Dr. Cloninger indicated that a new MRI at this point would be helpful. [Tr. 794]. Dr.

Cloninger further stated that he was not competent to testify regarding Aldao's depression and anxiety. Id.

Aldao's common law wife, Ms. Yime Vaez, testified that she has been disabled herself for the past five years due to major depression. [Tr. 796]. Notwithstanding, she helped Aldao take a shower, get dressed, and go to doctor's appointments. [Tr. 796]. She also prepared his meals, administered his medications and cleaned the house. Id. Ms. Vaez testified further that Aldao did not want to bathe, eat, or talk, and he was grouchy, cried a lot, and laid in bed most of the time. [Tr. 797]. She also testified that they could not afford any payments for psychiatric treatment. [Tr. 798]. Moreover, the ALJ noted that Ms. Vaez had been receiving social security disability benefits for the past five years due to depression. [Tr. 37].

Vocational expert, Ms. Jeannine Salek, testified that other jobs existed in the national economy if Aldao was capable of performing a full range of light work with mental limitations consisting of simple, routine, repetitive tasks. [Tr. 816-19]. However, she also stated that, if he was not able to stand and walk for a total of 6 hours total in an 8-hour workday, he could not perform any light level work. [Tr. 820]. She further stated that, if he was off-task up to 20 percent of a work day due to concentration lapses, he could not perform any work, and that, if he was likely to miss 4 days of work per month, he also would not be able to perform any work. [Tr. 821-22].

## Applicable Law

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(s)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making a

claimant unable to do his previous work, or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505; 404-1511.

The SSA regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520; 416. 920. First, the ALJ must determine if the claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b); 416.920(b). If so, then the claimant is not disabled, and the inquiry ends. 20 C.F.R. § 404.1520(b).

Otherwise, the analysis proceeds to the second step where the ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c); 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521. Absent such a finding, a claimant is not disabled, thus ending the inquiry. Otherwise, the analysis proceeds to the third step. The burden is on the claimant to provide substantial evidence establishing an impairment, whether physical or mental, that has more than a minimal effect on his ability to perform basic work. Bridges v. Bowen, 815 F.2d 622, 625-26 (11th Cir. 1987).

At step three, the ALJ must determine whether the claimant's impairments meet or equal an impairment listed in 20 C.F.R. § 404.1520(d), Subpart P, Appendix I. 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d). If so, the claimant is disabled. Certain impairments are so severe that, whether considered alone or in conjunction with other impairments, if established, require a finding of disability without further inquiry. Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the claimant's impairment does not meet or equal a listed impairment, then the analysis proceeds to the next step.

Prior to considering the fourth step, the ALJ must determine the claimant's residual

Page 8 of 27

functional capacity ("RFC") to perform past relevant work, based on all the evidence of record. 20 C.F.R. §§ 404.1520(e); 416.920(e). An individual's RFC is the remaining ability to do mental and physical work activities on a sustained basis despite impairment limitations. 20 C.F.R. § 404.1545(a). In making this determination, the ALJ must consider all of the claimant's impairments. 20 C.F.R. §§ 404.1520(e); 404.1545.

Then, at the fourth step, the ALJ must assess whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant's impairments do not prevent her from doing past relevant work, then he is not disabled. Id. The claimant bears the burden of proving that his impairments preclude any past relevant work. 20 C.F.R. §§ 404.1512(c); 416.912(c). The inability to perform previous work relates to the type of work performed, not merely a specific or prior job. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). If the claimant cannot perform past relevant work, then a *prima facie* case of disability is established, and the analysis proceeds to the final step. 20 C.F.R. §§ 404.1520(e); 416.920(e).

In step five, the ALJ must determine whether the claimant is able to do any other work in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 416.920(g). If the claimant is able to do other work, then he is not disabled. If the claimant's impairments prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). At this point, the burden shifts to the SSA to show that claimant can do other work that exists in significant numbers in the national economy given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1512(g); 404.1560(c). The burden rests with the claimant through the first four steps of the analysis, and shifts to the Commissioner only at step five. See, Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007).

## Summary of ALJ's Findings

The ALJ found that Aldao met the insured status requirements through March 31, 2014. [Tr. 30].

At step one, the ALJ found that Aldao had not engaged in substantial gainful activity since May 11, 2010. [Tr. 30]. At step two, the ALJ found that Aldao had the severe impairments of degenerative disease of the back and an affective mood disorder. [Tr. 30]. The ALJ also noted that Aldao's diagnosis of anxiety disorder not otherwise specified (NOS), adjustment disorder with mixed anxiety and depressed mood and somatoform disorder, and mild scoliosis had no more than a minimal effect upon Aldao's ability to perform basic work functions. Id. The ALJ based this finding upon the following: Aldao had not sought or received any treatment for a mental impairment from the alleged onset date through the consultative examination performed by Dr. Richard Elias Fernandez on March 15, 2011. Although Aldao claimed that he could not afford treatment for his mood disorder, he sought ongoing treatment for his physical injuries. Aldao had not required any emergency room care or inpatient psychiatric hospitalization, and he was not prescribed anti-anxiety medication or other psychotropic medication. In fact, he testified that he took medication prescribed to his wife. Aldao's activities of daily living included reading, watching television, and listening to music on a daily basis. He was able to ride in a car, pay bills, count change, handle a savings account, and use a checkbook.

At step three, the ALJ found that, whether considered singly or in combination, Aldao did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. [Tr. 31]. The ALJ found that Aldao had mild limitations in the activities of daily living; moderate difficulties in social functioning and

in concentration, persistence or pace; and no episodes of decompensation. [Tr. 33].

Next, upon consideration of all the symptoms and the medical record evidence, the ALJ determined that Aldao had the RFC to perform the full range of light work. [Tr. 34]. At step four, the ALJ found that Aldao was able to perform past relevant work as a messenger. [Tr. 39].

The ALJ made an alternative finding at step five. Upon considering Aldao's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Aldao could perform. [Tr. 39-40].

## Standard of Review

Judicial review of factual findings in disability cases is limited to determining whether the ALJ's findings were based upon substantial evidence and whether the correct legal standards were applied. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); 42 U.S.C. § 405(g). When supported by substantial evidence, the Commissioner's findings are conclusive. Richardson, 402 U.S. at 401. "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable person would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining whether substantial evidence exists, "[t]he district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [ALJ's] decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). The reviewing court must also be satisfied that the ALJ's decision correctly applied the legal standards. Bridges, 815 F.2d at 624.

In so doing, the court may not re-weigh evidence or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the SSA's decision. Baker on

Behalf of Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989); Martin v. Sullivan, 894 F.2d 1520 (11th Cir. 1990). In fact, even if the court finds that the evidence preponderates against the ALJ's decision, or if the reviewer would have reached a contrary result, the court must affirm, so long as the decision is supported by substantial evidence. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); 42 U.S.C. § 405(g). In short, the court is not permitted to re-weigh evidence or decide the facts anew. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

"The restrictive standard of review is applicable only to findings of fact and 'no similar presumption of validity attaches to the [ALJ's] conclusions of law, including determination of the proper standard to be applied in reviewing claims.'" Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). Failure by the ALJ to apply the correct legal standards or to provide the reviewing court with sufficient reasoning to determine that the correct legal principles were followed are grounds for reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## Alleged Errors by the ALJ

By way of summary, Aldao argued that the ALJ: (1) erred in finding that Aldao's impairments did not meet or equal listing 1.04; (2) rendered an internally inconsistent and unsupported RFC assessment; (3) failed to make specific findings or properly analyze the physical and mental demands of Aldao's past relevant work; (4) rendered a flawed credibility analysis; and (5) failed to fully and fairly develop the record.

## Discussion

**1.     Whether substantial evidence supported the ALJ's assessment that Aldao's impairments did not meet or equal a Listing.**

Aldao contended that the record supported a finding that he was presumptively disabled

under Listing 1.04B, because his back impairment met or equaled all of the listing criteria. Listing

1.04B sets forth the criteria for presumptive disability due to disorders of the spine. It provides in

pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1.

To satisfy a claim for automatic disability, Aldao must show that (1) his condition meets or

equals all criteria of Listing 1.04B, (2) any proffered medical evidence complies with the

requirements of the Listing's introduction, and (3) his condition meets the applicable duration

requirement of one year. See 20 C.F.R. § 404.1525(c)(1)-(5). "An impairment that manifests only

some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521,

530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), superseded by statute on other grounds as stated in

Colon v. Apfel, 133 F.Supp.2d 330, 338-339 (S.D.N.Y. 2001). Moreover, "[w]hen a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment . . . ." Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." Id.; 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

The Commissioner argued that, even though Aldao had the spinal disorder of degenerative disc disease of the back, he failed to demonstrate that this impairment involved compromise of the nerve root, as required by Listing 1.04. See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04. Dr. Cloninger testified that Aldao's 2010 MRI showed no compression of the nerve root. [Tr. 770-71]. Because there was no compression, the Commissioner thus argued that there was no evidence of a compromised nerve root. Aldao argued that "compromise" was a more expansive word than "compression," such that a nerve root could be compromised by entrapment from epidural fibrosis without showing direct compression. The undersigned is of the opinion that treating physicians would document their findings clearly based upon the medical evidence and not leave notes for legal professionals to draw conclusions based upon semantics. Had Aldao's nerve root showed compression, surely that fact would have been documented by a medical professional. Here, it was not.

Aldao argued that, contrary to the Commissioner's arguments, his epidural fibrosis entrapping the L4-5 nerve root was confirmed by surgical note and myelogram evidence from July 2008. See Ex. 38F. In support, he cited pages 703 and 706 of Exhibit 38F, which were treatment records from Gables Surgical Center for the period from July 8, 2008, to July 25, 2008, respectively.

The July 8, 2008 report provided that lumbar nerve root sleeve entrapment was noted, but there was no evidence of subarachnoid spread. [Tr. 703]. The July 22, 2008 report provided exactly the same. [Tr. 706]. Aldao argued that the ALJ failed to indicate whether she considered this evidence. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in h[er] decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Notwithstanding, the July 2008 epidural fibrosis finding predated the relevant period by two years.

Even if Aldao could show that his nerve root was compromised, his impairment still failed to meet or equal Listing 1.04B, because there was no showing of spinal arachnoiditis. See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04B. Although Aldao asserted that the finding of bilateral epidural obstruction and fibrosis was "effectively identical to a finding of spinal arachnoiditis," he cited no medical or other authority in support of this contention. The listing requires a finding of spinal arachnoiditis, even stating that such a finding must be "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging." See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04B. As the Commissioner correctly argued, here, nowhere in the record was Aldao diagnosed as having spinal arachnoiditis or anything equivalent. The record contained no mention of spinal arachnoiditis, much less one that was confirmed in the manner required by the listing.

Next, Aldao argued that his treating physician, Dr. Kallan, noted true long track signs indicative of motor or sensory losses and nerve lesions on June 1, 2010. [Tr. 402]. Aldao also had continued stocking glove anesthesia despite normal functional limits, and a need for continued

treatment to address his lingering symptoms. [Tr. 396]. However, Dr. Kallan also noted that Aldao would have no permanent physical impairment and that he had markedly improved. [Tr. 396]. On June 15, 2010, Dr. Kallan noted that Aldao's exam was entirely within normal limits as far as the spine. [Tr. 401]. On July 26, 2010, Dr. Kallan found that Aldao was capable of going back to light duty with no prolonged bending, stooping, kneeling or crawling, and no lifting over 20 lbs. [Tr. 397]. An August 7, 2010 MRI of the lumbar spine found there was no disc herniation, spinal stenosis, or foraminal narrowing at L1-2; L2-3; L3-4; L4-5; there was mild disc bulge at L2-3; there was a posterior disc bulge and posterior central annular tear at L4-5; and there was a posterior disc bulge and small left paracentral annular tear at L5-S1. [Tr. 406]. On August 23, 2010, Dr. Kallan concluded that Aldao had reached maximum medical improvement without permanent physical impairment from his injury. His motor function and deep tendon reflexes were intact, and he had no muscle spasms. See Ex. 4F.

Aldao argued further that the ALJ erred in giving some weight to the testimony of Dr. Cloninger because he demonstrated a general lack of specific knowledge regarding the evidence, misidentified record evidence, and failed to mention a specific finding of epidural fibrosis. He took issue with Dr. Cloninger's suggestion that the evidence did not adequately account for the pain in his legs. Aldao argued that Dr. Cloninger had failed to take note of the epidural fibrosis with entrapment of the L4-5 nerve root. Actually, Dr. Cloninger did consider this evidence. He noted that, although an annular tear could cause back pain, in order to meet the listing level impairment, a disc bulge was insufficient. [Tr. 791-92]. The MRI had to show nerve impingement, which was not present in the MRI's of record. Id.

The undersigned reviewed the transcript of the hearing, as well as the ALJ's decision, and

disagrees with Aldao's contentions. Dr. Cloninger took into account the whole record, even material predating the alleged onset date. Dr. Cloninger's opinion was consistent with the overall record evidence. He reviewed the physical RFC, dated February 28, 2011, and the mental RFC, dated May 17, 2011. The June 7, 2011 MRI showed a disc bulge at L4-5 and L5-S1. See Exh. 26F. Dr. Cloninger noted a disparity between Aldao's testimony and the record evidence. He concluded that Aldao did not meet or equal a listing. Moreover, the record shows that Aldao was represented by counsel at the hearing. Aldao's counsel questioned Dr. Cloninger but not about the impact of the July 2008 finding of epidural fibrosis. Had the evidence been of such a crucial nature, surely it would have been directly addressed by Aldao's counsel at the hearing.

Finally, Aldao argued that dismissal of evidence predating the alleged onset date was error because his condition was chronic and impervious to treatment. The SSA must make every reasonable effort to develop the claimants' complete medical history for at least twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d). "[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." Carway v. Colvin, No. 13-CV-2431, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014) (citing Briscoe v. Astrue, 892 F.Supp.2d 567, 582 (S.D.N.Y. 2012)); See, Carmickle v. Comm'r Social Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("[m]edical opinions that predate the alleged onset of disability are of limited relevance.").

Aldao's alleged onset date was May 11, 2010, and he filed his application on January 27, 2011. Thus, the ALJ had a responsibility to develop Aldao's complete medical history starting from January 27, 2010, pursuant to 20 C.F.R. § 404.1512(d). Even if relevant, there is substantial record

evidence indicating that Aldao's condition improved following these records, *e.g.*, Dr. Kallan's treatment notes dated June and August 2010, reporting Aldao showed marked improvement. Indeed, after each injury, Aldao returned to work. Aldao could not be considered disabled if he engaged in substantial gainful activity, regardless of how severe his physical or mental impairments were, according to 20 C.F.R. § 404.1520(b).

The undersigned must only decide whether the ALJ's decision contains sufficient explanation to show that the ALJ "considered [Aldao's] medical condition as a whole." Dyer, 395 F.3d at 1211. The ALJ specifically considered and rejected Listing 1.04B. The medical evidence does not definitively diagnose Aldao with a disorder of the spine that resulted in compromise of a nerve root. Thus, Aldao has failed to show that his impairments meet Listing 1.04. See Rouse v. Astrue, 2010 WL 457320, *5 (M.D. Fla. Feb. 4, 2010) (finding the plaintiff did not meet Listing 1.04A when the radiologist provided an equivocal statement that he could not "exclude resultant nerve root compression"). Thus, there is no error in the ALJ's finding.

**2.    Whether substantial evidence supported the ALJ's RFC determination.**

The ALJ found that Aldao had "the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b)." [Tr. 34]. Aldao claimed that the RFC determination was deficient, because the ALJ failed to conduct a function-by-function analysis in accordance with SSR 96-8p, and because it was inconsistent with the record evidence.

The ALJ bears the responsibility of assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-5p. The RFC is the most a claimant can still do despite limitations, based on all of the relevant evidence. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3); SSR 96-8p. Social Security Ruling 96-8P guides an ALJ's RFC assessment

of a claimant. Such assessment is "based on all the relevant evidence in [the claimant's] case record," and not simply on a physician's opinion. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). However, there is no specific format for the function-by-function analysis set forth in SSR 96-8p. Eubanks-Glades v. Colvin, No. 13-60029-CIV, 2013 WL 6116810, at *14 (S.D. Fla. Nov. 20, 2013); Zuni v. Astrue, No. 08-21489-CIV, 2009 WL 2929388, at *4 (S.D. Fla. Sept. 9, 2009).

Here, in making the RFC assessment, the ALJ carefully considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence, and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. [Tr. 34]. Additionally, the ALJ considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. [Tr. 34].

With respect to Aldao's degenerative disc disease, the ALJ found that the record overall reflected improvements in the condition. [Tr. 36]. The condition responded to treatment as evidenced by the fact that Aldao returned to work after the 2003 and 2008 job-related injuries. Id. With respect to the last injury sustained in May 2010, the ALJ noted that an MRI in October 2010 showed that the disc herniation was actually smaller than that seen in 2008 film. Id. Thus, Aldao's impairment responded to conservative treatment. Id.

With respect to Aldao's mental impairments, the ALJ found that he did not seek any treatment from the alleged onset date through the date of the consultative examination on March 15, 2011. [Tr. 36]. Since that time, Aldao had not sought or received treatment for a mental impairment. Id. The ALJ noted that, through August 2010, Aldao reported taking his wife's Prozac, but that his medication list did not include psychotropic medication. Id.

Aldao argued that the ALJ acknowledged limitations in excess of the statutory requirements

but failed to identify those limitations. Aldao testified at the hearing that he had to change positions

frequently, that he could stand and walk for 15 to 20 minutes at a time, and that he could not sit for

prolonged periods. [Tr. 772-74]. The Commissioner argued that the ALJ need not itemize limitations

already implicit in his reference to the statutory definition of a full range of "light work."[2] The

functional demands associated with light work were defined by regulation, which the ALJ referenced

in the RFC determination, thus the ALJ performed the function-by-function analysis contemplated

by SSR 96-8p. The Commissioner further argued that, although Aldao claimed that he could not

perform the standing and walking requirements associated with light work, he failed to show that

any such limitations were supported by record evidence. His physical examinations were within

---

[2]  SSR 83-10 defines light work as:

> Light work. The regulations define light work as lifting no more than 20 pounds at
> a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even
> though the weight lifted in a particular light job may be very little, a job is in this
> category when it requires a good deal of walking or standing—the primary difference
> between sedentary and most light jobs. A job is also in this category when it involves
> sitting most of the time but with some pushing and pulling of arm-hand or leg-foot
> controls, which require greater exertion than in sedentary work; e.g., mattress sewing
> machine operator, motor-grader operator, and road-roller operator (skilled and
> semiskilled jobs in these particular instances). Relatively few unskilled light jobs are
> performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent
> lifting or carrying requires being on one's feet up to two-thirds of a workday, the full
> range of light work requires standing or walking, off and on, for a total of
> approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during
> the remaining time. The lifting requirement for the majority of light jobs can be
> accomplished with occasional, rather than frequent, stooping. Many unskilled light
> jobs are performed primarily in one location, with the ability to stand being more
> critical than the ability to walk. They require use of arms and hands to grasp and to
> hold and turn objects, and they generally do not require use of the fingers for fine
> activities to the extent required in much sedentary work.

SSR 83-10.

normal limits, and as noted, no treating or examining physician had opined that he had such limitations beyond those included in the statutory definition of light work.

Next, Aldao argued that the ALJ failed to support the functional assessment with an appropriate medical source statement. The Commissioner noted that the ALJ granted considerable weight to Dr. Kallan's opinion and some weight to the opinions of Dr. Cloninger, Dr. O'Neil, and Dr. Levy. All of these doctors opined limitations consistent with the ALJ's RFC determination. There was no requirement that the ALJ obtain medical input for the RFC to be appropriate.

Additionally, Aldao argued that the ALJ failed to take into account Aldao's memory deficits and markedly limited stress tolerance. This argument was raised for the first time in the reply and as such shall not be considered substantively. Notwithstanding, the undersigned notes that these circumstances were considered by the ALJ in her determination that Aldao's mental impairments was not severe. [Tr. 33].

Upon review, the undersigned finds that the RFC was supported by the medical evidence of record, and Aldao's statements to the contrary were found by the ALJ to lack credibility. The ALJ based her determination upon: (1) a May 27, 2010 MRI of Aldao's lumbar spine showing no acute herniated discs and examination notes showing that Aldao could heel-walk, toe-walk, and walk on the side of his foot and perform straight leg raises [Tr. 35, 404]; (2) a June 15, 2010 lumbar examination that was entirely within normal limits wherein Aldao demonstrated improvement with his neurological symptoms [Tr. 35, 401]; (3) Dr. Kallan's July 16, 2010 opinion that Aldao did not require an assistive device to ambulate, was progressively improving, and could return to light duty work, with no prolonged bending, stooping, kneeling, or crawling and no lifting over 20 pounds [Tr. 35, 36, 397-98]; (4) an October 12, 2010 note by Dr. Salamon that Aldao had a very small disc

herniation that was improved from a 2008 study and opinion that Aldao's impairments resulted in a total bodily impairment of zero percent [Tr. 35, 36, 433]; (5) an August 2011 neurological examination that was within normal limits with an intact neurovascular examination [Tr. 35-36, 526-27]; (6) the fact that Aldao did not seek any treatment for his mental impairment during the relevant period [Tr. 36]; (7) the fact that the medication lists submitted by Aldao showed that he did not take any prescribed medication for his mental impairment [Tr. 36, 252]; (8) notes from Dr. Fernandez, dated March 15, 2011, finding that Aldao was cooperative, alert, and oriented, and had a mildly fair prognosis with appropriate treatment [Tr. 36-37, 470-71]; (9) the opinions of Dr. O'Neil and Dr. Levy, rendered on March 27, 2011, and May 17, 2011, respectively, that Aldao could perform mental activities consistent with unskilled work [Tr. 487-90, 502-05]; and (10) the fact that no treating or examining source had opined that Aldao had limitations in excess of the ALJ's RFC determination [Tr. 38]. See 20 C.F.R. § 404.1545(a)(3) (RFC is "based on all of the relevant medical and other evidence").

**3.      Whether substantial evidence supported the ALJ's credibility determination.**

Aldao argued that the ALJ erred because her assessment of his credibility was not properly documented, and she discredited his testimony implicitly determining his credibility after assessing his ability to work.

In assessing a claimant's credibility, the ALJ must first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent that these limit the claimant's functioning. If the statements about the intensity, persistence, and limiting effects of

pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on consideration of the entire record. [Tr. 34]. The responsibility to weigh the claimant's complaints about his symptoms against the record falls on the ALJ alone. 20 C.F.R. § 404.1529(a). Clearly articulated credibility findings that are supported by substantial evidence are not to be disturbed by a reviewing court. Foote, 67 F.3d at 1562.

Here, the ALJ found that Aldao's testimony relating to his inability to work because of totally disabling symptoms was not entirely credible because these were not supported by medically acceptable clinical and laboratory diagnostic techniques. [Tr. 38]. The ALJ found that Aldao had severe impairments that could reasonably be expected to cause his alleged symptoms, but that his claims of disability, intensity, persistence and limiting effect were not credible to the extent they conflicted with the RFC for a modified range of light work. [Tr. 37]. According to Aldao, the ALJ discounted his testimony only on the basis of his use of a cane to walk when his treating physician had opined that Aldao did not need a cane. As the Commissioner correctly argued, however, the ALJ provided other factors in support of her credibility determination.

The ALJ's credibility determination was based upon the following: (1) Aldao testified that he performed no activities of daily living and that his wife cared for him entirely. Aldao's wife testified that she did everything for Aldao. However, his wife also testified that she was disabled due to major depression and had been receiving disability benefits for the past five years [Tr. 37, 776-77, 795-97]. The ALJ noted that, given the wife's testimony, either the wife or Aldao was not as limited as alleged. [Tr. 37]; (2) Aldao testified that he required a cane for ambulation, but Dr. Kallan, Aldao's treating physician, opined in July 2010 that Aldao did not need to use a cane or other assistive walking device and had shown remarkable improvement [Tr. 37, 397, 772, 775]; (3) In

October 2010, Dr. Salamon opined that Aldao's condition did not require surgery because Aldao had reached maximum medical improvement with a total bodily impairment of zero percent. [Tr. 38, 433, 438]; (4) Aldao's MRI showed only a very small disc herniation that improved over time [Tr. 35, 433]; (5) Aldao testified to numbness and tingling in his legs and toes, yet his neurological examinations were consistently within normal limits; moreover, the medical expert testified that Aldao's impairments could not cause numbness [Tr. 37, 347, 712, 772, 792]; and (6) Aldao testified to disabling mental impairments, yet he sought no mental health treatment during the relevant period and was not prescribed any medication for a mental impairment. [Tr. 36, 252].

Given these supporting facts, any error would be harmless, because substantial evidence supported the credibility determination. Based upon the foregoing, the undersigned finds that the ALJ's credibility assessment was properly supported by substantial record evidence and should not be disturbed.

**4.    Whether the ALJ properly considered the mental and physical demands of Aldao's past relevant work as a messenger.**

Aldao argued that the ALJ failed to make specific findings regarding the physical and mental demands of his past work. The ALJ elicited testimony from a vocational expert ("VE") as to the mental and physical demands of Aldao's past work. [Tr. 801-10]. In describing Aldao's past relevant work, the VE testified that Aldao's job as a messenger was a light job requiring a special vocational preparation (SVP) level of 2. [Tr. 810]. The Commissioner argued that the ALJ obtained information regarding the demands of Aldao's messenger job, specifically its exertional level and SVP rating, from the VE and the DOT. [Tr. 810]. Moreover, the ALJ made an alternative finding, at step 5, that Aldao could perform other light jobs, such as fast food worker, cleaner/housekeeper, and parking lot attendant. [Tr. 40, 818-19]. Thus, even assuming that the ALJ had failed to properly develop the

mental and physical demands of Aldao's messenger job, such error would be harmless because Aldao could still perform the other three jobs identified by the ALJ.

### 5. Whether the ALJ developed a full and fair record.

Aldao challenged the ALJ's development of the record with respect to his mental impairment. He argued that the functional limitations noted by the reviewing agency psychologists contradicted the ALJ's functional assessment and appeared to preclude employment. Thus, he contended that additional cognitive testing was warranted.

The ALJ has a duty to develop a full and fair record. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984). As noted, this generally requires development of a claimant's medical history for the twelve months preceding the month in which a disability application is filed, "unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." See 20 C.F.R. § 404.1512(d).

An ALJ may order a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to make a determination or decision on a claimant's claim. 20 C.F.R. § 404.1519a. However, the ALJ is not required to order an examination if it is not necessary to enable the ALJ to make a disability determination. 20 C.F.R. § 404.1517. Moreover, the claimant bears the burden to provide medical evidence showing that he has an impairment and to demonstrate   just how severe that impairment is during the time he is disabled. 20 C.F.R. § 404.1512(c).

A claimant must show some prejudice before a remand to the Commissioner for further development is ordered. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997). In evaluating whether a remand is warranted, courts are guided by whether the record as a whole "shows the kind

of gaps in the evidence necessary to demonstrate prejudice." Id.; Crist v. Astrue, No. 8:06-cv-1587-T-26TBM, 2008 WL 821934 (M.D. Fla. Mar. 26, 2008).

The undersigned finds that no additional consultative examination was warranted in this case because the record was sufficiently developed. The record contained, *inter alia*, a mental consultative examination, dated March 15, 2011, by Dr. Elias Fernandez, who opined that Aldao had mental limitations consistent with the ALJ's RFC. Aldao argued that this assessment was outdated and that the ALJ should have obtained an additional mental consultative examination. Although Aldao characterized certain medical evidence as "outdated," all of the records considered by the ALJ were from the relevant period of time, and thus, properly relied upon.

The Commissioner argued that it predated the ALJ's decision only by a year and a half and that Aldao had not shown that this mental impairments had significantly changed or worsened following that examination. [Tr. 469-72]. In fact, as the Commissioner correctly noted, there were no records regarding Aldao's mental health because Aldao never sought or received treatment for any mental impairments. Given these circumstances, the ALJ was not required to order a consultative psychological examination. See Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988).

The undersigned finds that Aldao's unsupported allegations are an insufficient basis to find that a consultative examination was necessary. Indeed, Aldao can only speculate that a consultative examination would support–and not refute–his claim of a disabling mental impairment. Moreover, as discussed above, the ALJ's evaluation of Aldao's mental impairment was supported by substantial record evidence, and Aldao failed to carry his burden to show that a mental health impairment caused greater functional limitations than those assessed by the ALJ.

## Conclusion

The Court finds that the ALJ provided a well-reasoned and detailed rationale for denying Aldao's disability claims. Based on the foregoing, the Court finds that the Commissioner's decision was supported by the substantial evidence of record and should not be disturbed. 42 U .S.C. § 405(g). Furthermore, Aldao failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other grounds for reversal exists.

## Recommendation

Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 31) be **DENIED**, and that Defendant's Motion for Summary Judgment (ECF No. 32) be **GRANTED**.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with Judge Gayles within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this ___ day of February 2016.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:     Hon. Darrin P. Gayles
        Counsel of record